# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:19-cv-00709-MR

| | |
|---|---|
| RICHARD BOLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| FNU SMITH, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on Defendant Philemon's Motion for Summary Judgment [Doc. 40], and on the Plaintiff's Motion for Sanctions [Doc. 43].[1]

## I. BACKGROUND

The Plaintiff Richard Bolen filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Lanesboro Correctional Institution.[2] The Plaintiff's unverified Complaint [Doc. 1: Compl.] passed initial review with respect to the Plaintiff's Eighth Amendment claims

---

[1] The Court previously denied the Motion to Strike that is contained in that same pleading. [See Doc. 59].

[2] The Plaintiff filed this action *pro se* while he was incarcerated at the Alexander Correctional Institution. He has now been released from custody and is represented by counsel.

against Defendants Dees, Hildreth, and Smith, all of whom are correctional officers. [Doc. 9: Initial Rev. Order]. The Court subsequently granted the Plaintiff leave to amend [Doc. 20: Order], and he chose not to pursue claims against those Defendants [See Doc. 21: Am. Compl.]. The unverified Amended Complaint passed initial review solely against Darrick Philemon, a correctional lieutenant, with respect to claims for deliberate indifference and negligence. [Doc. 23: Initial Rev. Am. Compl.]. The Plaintiff seeks damages. [Doc. 21: Am. Compl. at 5].

Presently pending is the Defendant's Motion for Summary Judgment.[3] [Doc. 40: MSJ; Doc. 42: Defendant's MSJ Ex]. The Plaintiff has filed a Response and exhibits. [Doc. 60: Resp.; see Doc. 61: Resp. Ex]. The Defendant did not file a reply, and the time to do so has expired. Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

---

[3] The Plaintiff filed a Motion for Summary Judgment [Doc. 38: Plaintiff's MSJ], which was previously denied [Doc. 59: Order].

for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at

3

248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

On February 4, 2017, at around 3:00 p.m., the Plaintiff attempted to smoke K2 in his cell. [Doc. 61-1: Resp. Ex at 24 (Plaintiff's Stmt.)]. The drug knocked him unconscious, causing him to drop the flame on his blanket. [Id.]. He woke up with his legs on fire, unable to move. [Id.]. He yelled for help and other inmates made noise to get officers' attention. [Id.].

Officers discovered that the Plaintiff had started a fire inside his cell at 3:11 p.m.,[4] at which time the fire alarm was already going off. [Doc. 61-1: Resp. Ex at 16 (Harrington Stmt.); Doc. 61-1: Resp. Ex at 18 (Hodgson Stmt.); Doc. 61-1: Resp. Ex at 21 (Heh Stmt.); see Doc. 61-1: Resp. Ex at 24 (Plaintiff's Stmt.)]. Officers laughed and joked, saying that they "should let [his] dumb ass burn." [Doc. 61-1: Resp. Ex at 24 (Plaintiff's Stmt.)]. Officer Harrington called the unit sergeant on the radio and advised him of the fire. [Doc. 61-1: Resp. Ex at 16 (Harrington Stmt.)].

---

[4] This time is taken from the housing pod video footage. Officer Harrison's witness statement indicates that he discovered the fire at "around 1520 hrs." [Doc. 61-1: Resp. Ex at 16].

At approximately 3:20 p.m., the unit sergeant advised Lieutenant Philemon over the radio that the Plaintiff had set a cell fire. [Doc. 42-7: Philemon Decl. at ¶ 3; Doc. 61-1: Resp. Ex at 19 (Philemon Stmt.)]. Lieutenant Philemon was working in a different part of the prison at the time; he was not aware of the situation until being notified by the sergeant and responding officers. [Doc. 42-7: Philemon Decl. at ¶ 4]. Lieutenant Philemon immediately radioed back to put out the fire. [Id. at ¶ 7]. Officer Heh used a fire extinguisher through the cell's wicket door at 3:14.[5] [Doc. 61-1: Resp. Ex at 21 (Heh Stmt.)]. Lieutenant Philemon was not aware that the Plaintiff was actually burning or needed help. [Doc. 42-7: Philemon Decl. at ¶ 6]. Lieutenant Philemon did not tell anyone not to open the door or to wait for him to arrive, and he did not need to be present for a cell door to be opened. [Id. at ¶¶ 7, 9]. Lieutenant Philemon responded to the cell as soon as possible. [Id. at ¶ 8].

Once Lieutenant Philemon arrived at the cell, he saw staff outside the cell with the food passage door open, venting smoke out of the cell. [Id. at ¶ 10]. Lieutenant Philemon ordered the Plaintiff to submit to hand restraints, but he received no response. [Id. at ¶ 11]. It was impossible to see the

---

[5] This time is taken from the video footage. Officer Heh's witness statement indicates that he did not respond to the cell until "approx 1520 hrs." [Doc. 61-1: Resp. Ex at 21].

6

Plaintiff in his cell because of the smoke. [Id. at ¶ 12]. Lieutenant Philemon told staff to release the cell door and to place a shield at the doorway. [Id. at ¶ 13]. Once the door was opened and the smoke cleared, Lieutenant Philemon heard the Plaintiff begin talking to staff. [Id. at ¶ 14]. Lieutenant Philemon observed the Plaintiff sitting on his mattress on the floor with charred burn marks around him. [Id. at ¶ 15].

At 3:26 p.m.,[6] the Plaintiff was taken out of the cell. He was assisted into a wheelchair and restrained with mechanical restraints, and he was taken to main medical. [Doc. 42-7: Philemon Decl. at ¶ 16]. At 4:00 p.m., Lieutenant Philemon advised master control to call EMS due to third-degree burns on the Plaintiff's feet and lower legs. [Doc. 61-1: Response Ex at 30-32 (Shift Narrative)]. EMS arrived at 4:06 p.m. [Id. at 13 (Incident Report)]. The Plaintiff was airlifted to a burn center at 5:15 p.m. [Id.].

Lieutenant Philemon initially thought that the Plaintiff had set the fire intentionally to cause a disturbance. [Id. at ¶ 5]. Around the time of the incident, it was common for inmates to set fires in their cells, not respond, and then attack correctional officers when the door was opened. [Id. at ¶ 21]. Lieutenant Philemon was attacked in this manner around the time of the incident, and he was aware of other similar incidents. [Id. at ¶ 22].

---

[6] This time is taken from the video.

7

Lieutenant Philemon did not know that the Plaintiff had set himself on fire in his cell until the door was opened and he saw Plaintiff's burns. [Id. at ¶ 20]. At no time did Lieutenant Philemon say "let his dumb ass burn," as Plaintiff had alleged. [Id. at ¶ 19]. Further, he did not hear anyone else say that or anything similar. [Id.]. Lieutenant Philemon remained professional and expected his staff to do the same. [Id.].

The Incident Report reflects that "an emergency code (Code 5) was not called for this incident" and that the "[i]ncident was not handled properly…." [Doc. 61-1: Resp. Ex at 13]. The Regional Director concluded that "it appears that the actions taken by staff once the fire was discovered are questionable [and] [i]t appears that staff failed to take appropriate and timely action during the course of this incident…." [Id. at 15].

On August 25, 2017, the Plaintiff filed a grievance addressing the fire as follows:

> Grievance Statement: I was burned severely over the lower portions of my body due to the deliberate indifference and cruel and unusual punishment of correction officers Tyrees, Hildreth, Smith, and corrections sergeant Hodges[7] on February 4, 2017. These prison staff members taunted me, antagonized me, laughed and joked for several minutes while I laid in my cell, in their sight burning in fire after they the officers discovered me.

---

[7] As noted previously, the Complaint passed initial review on the Plaintiff's deliberate indifference claim against Officer Hildreth and Officer Smith, but the Plaintiff did not assert a claim against these officers in the superseding Amended Complaint. Officers Tyrees and Hodges were not named as defendants in this action.

8

> They did not rescue me and deliver or summons emergency medical response immediately after discovering me. I filed 2 grievances concerning this at Central Prison health care complex/hospital as soon as I was released from UNC/Chapel Hill burn center in 05-09-2017. I have never received a pink copy or response from these 2 grievances I submitted concerning February 4, 2017 fire incident at Lanesboro Correction Institution that resulted in me being permanently disabled and temporarily confined to a wheelchair. I am grieving the non-response of these 2 grievances that concerns there intentional negligence & deliberate indifference by prisons.
>
> What remedy would resolve your grievance? To receive responses from 2 prior grievances to be in physical condition that I would be in if prisons staff would have rescued me from fire immediately after discovering me and rendering emergency medical response. To be transferred to a medical facility capable of rendering in the care my injuries require daily health level 3A & B.

[Doc. 61-1: Resp. Ex at 2-3].

The Plaintiff has submitted a video file containing footage from the housing wing that shows the following events:[8]

| | |
|---|---|
| 03:11 | Smoke emerges from the Plaintiff's cell. |
| 03:12 | Officer Harrison enters the pod, peers into Plaintiff's cell through the door, appears to use his radio, and exits the pod. |
| 03:13 | Correctional staff enter the pod, gather around Plaintiff's cell door, and use a flashlight to peer inside. |
| 03:14 | Officer Heh uses a fire extinguisher through the cell's food passage door. |

---

[8] The view of the Plaintiff's first-floor cell is partially obscured by the second-floor walkway, bars, a stairway, officers' bodies, and smoke.

| | |
|---|---|
| 03:15 | Flashlights are used again. |
| 03:18 | Heavy smoke continues to emerge from the cell; flashlights are used again. |
| 03:21 | The cell door is opened partially; heavy smoke emerges; flashlights are used again. |
| 03:22 | The cell door is opened completely |
| 03:23 | An officer appears to enter the cell. |
| 03:25 | A wheelchair is brought to the cell. |
| 03:26 | The Plaintiff is removed from the cell and taken off the pod. |

## IV. DISCUSSION

### A. Exhaustion

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. 534 U.S. 516, 532 (2002). The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court

stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice. Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law ... requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). Because exhaustion of administrative remedies is an affirmative defense, defendants have the burden of pleading and proving lack of exhaustion. Id. at 216.

The North Carolina Department of Adult Corrections (NCDAC)[9] has established a three-step procedure governing submission and review of inmate grievances in its Administrative Remedies Procedures (ARP). Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). Inmates are required to "properly" exhaust administrative remedies in accordance with ARP.

---

[9] Previously known as the North Carolina Department of Public Safety (NCDPS).

Woodford, 548 U.S. at 90; Moore, 517 F.3d at 726.  An inmate does not exhaust his administrative remedies with the NCDAC until he completes all three steps of the ARP.  Moore, 517 F.3d at 726.

Here, Defendant Philemon argues that the Plaintiff failed to exhaust his administrative remedies because the August 25 grievance addresses only the actions of other correctional staff and not the actions of Defendant Philemon specifically.

The August 25 grievance addresses correctional staff's alleged failure to promptly rescue him from the fire and provide emergency medical aid.  This was sufficient to reasonably notify NCDAC of his claims that prison staff's response to the fire was insufficient and delayed.  That the Plaintiff mentioned other staff in the grievance, but failed to name Defendant Philemon, is not determinative.  Because the ARP does not require an inmate to identify specific individuals in a grievance, the Plaintiff was not required to name Defendant Philemon to satisfy the PLRA's exhaustion requirement.  See Moore, 517 F.3d at 726 ("The ARP … does not require identification of the persons responsible for the challenged conduct…."); Jones, 549 U.S. at 218 ("it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion").  Accordingly, the Defendant's Motion for Summary Judgment for lack of exhaustion is denied.

## B. Merits

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. Amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious—and a subjective component—that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Mere delay, therefore, is not enough. Moskos v. Hardee, 24 F.4th 289, 298 (4th Cir. 2022). The objective prong requires a plaintiff to show that the alleged delay put him at a "substantial risk" of "serious harm." Id. (quoting Moss v. Harwood, 19 F.4th 614, 624 (4th Cir. 2021); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016)). "A commonplace medical delay such as that experienced in everyday life will only rarely suffice to constitute an Eighth Amendment violation, absent the unusual circumstances where the delay itself places the prisoner at 'substantial risk of serious harm,' such as where the prisoner's condition deteriorates markedly or the ailment is of an urgent nature." Moskos, 24 F.4th at 298.

To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants "acted personally" to cause the alleged violation. See

Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). As such, the doctrine of respondeat superior does not apply in actions brought under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A supervisor can only be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Here, the Plaintiff claims that Defendant Philemon was deliberately indifferent in that he did not call a Code 5 fire; he failed to enter the cell or pull the Plaintiff from it for 15 minutes while the Plaintiff was burning; and he allowed staff to make jokes about the Plaintiff being on fire. [Doc. 21 at 4, 6].

The undisputed forecast of evidence demonstrates that the Plaintiff set himself on fire around 3:00 p.m.; that the fire was discovered by staff at 3:11; that Defendant Philemon then learned of the fire by radio and immediately ordered staff to extinguish the fire, which was initiated at 3:14 pm; that Defendant Philemon discovered that the Plaintiff had been burned at around

3:21 p.m. or 3:22 p.m.; that the Plaintiff was removed from the cell and taken to medical at 3:26 p.m.; and that no "Code 5" was called. [Doc. 61-1: Resp. Ex at 24-25 (Plaintiff's Stmt.); Doc. 61-1: Resp. Ex at 13 (Incident Report); Doc. 42-7: Philemon Decl. at ¶ 3)]. The Plaintiff has not forecast any evidence to support a finding that the 15-minute delay was caused by Philemon personally, or that he was responsible for any delay by staff. To the contrary, the uncontroverted forecast of evidence shows that Defendant Philemon directed his staff to act promptly, and that there was a delay of just minutes between the time when Philemon discovered that the Plaintiff sustained burns and when the Plaintiff was taken for medical treatment.

Moreover, there is no genuine dispute of material fact regarding Defendant Philemon's subjective state of mind. The undisputed forecast of evidence shows that Defendant Philemon was not aware that the Plaintiff was actually burning or needed help [Doc. 42-7: Philemon Decl. at ¶ 6]; that upon learning of the fire in the Plaintiff's cell, he immediately radioed staff to put out the fire [id. at ¶ 7]; that he responded as soon as possible after he was called [id. at ¶ 8]; that he was not aware that the Plaintiff had set himself on fire until the door was opened and he saw Plaintiff's burns [id. at ¶ 20]; that he never said "let his dumb ass burn" or anything similar, and did not hear anyone else make such statements [id. at ¶ 19]; and that he remained

15

professional throughout the incident and expected his staff to do the same [id.]. While the Plaintiff has presented a forecast of evidence that certain staff members laughed and taunted him, he has not presented any evidence that Defendant Philemon ever engaged in such behavior, that he witnessed other staff doing so, or that he was deliberately indifferent to or tacitly authorized such practices. Moreover, the Plaintiff has not forecast any evidence that the failure to call a Code 5, or the brief delay in transporting the Plaintiff from his cell to medical were due to Defendant Philemon's deliberate indifference, either personally or as a supervisor. Although the forecast of evidence suggests that prison staff could have handled the overall situation in a more appropriate and timely manner, there has been no forecast of evidence presented from which a reasonable jury could conclude that Defendant Philemon was deliberately indifferent to the Plaintiff's serious medical needs or that he is liable under a supervisory theory for the deliberate indifference of others. Accordingly, Defendant Philemon's Motion for Summary Judgment will be granted.[10]

---

[10] Because the Plaintiff has not presented a forecast of evidence that Defendant Philemon violated a constitutional right, Defendant Philemon is entitled to qualified immunity on Plaintiff's § 1983 claim against him. As such, the Court grants summary judgment on this ground as well.

16

Case 3:19-cv-00709-MR    Document 63    Filed 03/28/23    Page 16 of 19

## C. Negligence

On initial review, the Court allowed Plaintiff's North Carolina negligence claim to proceed without addressing it in detail. [Doc. 23 at 6-8]. Because the Court is dismissing all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for negligence. See 28 U.S.C. § 1367(c)(3). The Court, therefore, will dismiss this claim without prejudice.

## D. Motion for Sanctions

The Plaintiff seeks sanctions for defense counsel's failure to comply with discovery requests. [Doc. 45]. On January 24, 2023, the Court held the Motion for Sanctions in abeyance to give Plaintiff's counsel the opportunity to submit an affidavit regarding the time and expense incurred as a result of defense counsel's failure to timely comply with the Plaintiff's discovery requests. [Doc. 59]. On February 7, 2023, Plaintiff's counsel filed an Affidavit claiming a total of $2,812.50 for the time and expense incurred as a result of defense counsel's failure to comply with Plaintiff's discovery requests. [Doc. 62]. The Defendant has not responded, and the time to do so has expired.

Counsel for the Defendant shall show cause, within fifteen (15) days, why sanctions in the amount of $2,812.50 should not be imposed on defense counsel.

## IV. CONCLUSION

For the reasons stated herein, the Defendant's Motion for Summary Judgment is granted in part and denied in part, and this action is dismissed with prejudice except for the Plaintiff's negligence claim, which is dismissed without prejudice to raising the claim in state court. Counsel for the Defendant shall show cause, within fifteen (15) days, why sanctions in the amount of $2,812.50 should not be imposed on defense counsel.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 40] is **GRANTED IN PART AND DENIED IN PART**, and this action is **DISMISSED WITH PREJUDICE** except for the Plaintiff's negligence claim, which is **DISMISSED WITHOUT PREJUDICE** in accordance with this Order. A Judgment shall be entered contemporaneously herewith, thereby terminating this civil action.

**IT IS FURTHER ORDERED** that counsel for the Defendant shall show cause, within **fifteen (15) days**, why sanctions in the amount of $2,812.50 should not be imposed on the Defendant and/or defense counsel.

**IT IS SO ORDERED.**

Signed: March 28, 2023

Martin Reidinger
Chief United States District Judge